We granted the State of Alabama's petition for certiorari review to examine, as an issue of first impression in this State, whether the Department of Revenue could use the "work-back" method to calculate the value of natural gas at the wellhead in order to assess the privilege tax under §40-20-2(a), Ala. Code 1975. The State also raises an issue of whether any refund of such privilege taxes, paid under protest, portions of which were passed on to the counties and municipalities, is payable by the State without contribution from the counties and/or municipalities that received a portion of the funds.
In February 1988, the Alabama Department of Revenue assessed Phillips Petroleum Company and other producers of natural gas from the Chatom Field in Washington County over $2.6 million, representing privilege taxes, penalties, and interest. That amount, by stipulation, was reduced to approximately $1.3 million. The Department alleged that Phillips owed the sum because it had understated the value of the gas upon which it had paid taxes during the audit period of August 1, 1983, through July 31, 1986.
After remitting the amount, Phillips appealed for a refund. Phillips argued that the Department could not use the "work-back method" to figure the value of Phillips's gas for severance tax purposes. The trial court, after an ore tenus proceeding, held that the Department could use the work-back method to figure the value of the gas from the date that the Department had notified Phillips that the Department would determine the value of the gas by the work-back method. The trial court held that the Department was prohibited from using the work-back method to figure the value of the gas prior to that notification date. The trial court ordered the Department to pay Phillips a refund for the prior-to-notification period. Phillips and the Department appealed to the Court of Civil Appeals.
The Court of Civil Appeals addressed only two of the issues that had been raised by the parties, expressly finding that the following issues were dispositive: "(1) whether under the relevant oil and gas severance tax statute, the work-back method used by the Department in the 1988 assessment is actually permitted for use in valuing raw gas and (2) whether the state alone, and not the county or cities, should be responsible for paying any refund due to Phillips." State v.Phillips Petroleum Co., 638 So.2d 880, 882 (Ala.Civ.App. 1991). *Page 888 
The Court of Civil Appeals held that the trial court erred in holding that the Department could properly use the work-back method once it had notified Phillips. That court stated:
 "Not only is justification for use of the work-back method nowhere found in the relevant statute, but from the plain language of § 40-20-1(3), it is evident to this court that the statute imposes a duty upon the Department to value raw gas either by using the actual sales price of the gas or by considering the sales price of gas of like quality."
Phillips Petroleum Co., 638 So.2d at 884. That court also held that the State alone was responsible for paying the entire amount found to have been assessed in error and to be refunded to Phillips.
We affirm the judgment of the Court of Civil Appeals as to the second issue, regarding the responsibility for refunding the contested tax; however, we reverse as to that court's holding regarding the Department's authority to assess value based upon the work-back method of calculation.
 A.
Extensive discussion as to the second issue raised here on certiorari review is not required, because we are satisfied that the tax statutes are clear concerning the procedure to be followed when a tax is paid under protest and the taxpayer is entitled to a refund of the contested tax. Section 40-1-12, Ala. Code 1975,[1] states:
 "Whenever any money is paid to any officer authorized to receive or collect same, as taxes paid under protest, such officer shall certify such sum of money to the state treasury, with notice to the treasurer that said sum of money was paid under protest . . ., and it shall be the duty of the treasurer to hold such sum of money in an identified suspense account until it is judicially determined whether the taxes were legally levied and collected. . . . The treasurer shall give notice to the comptroller that such funds . . . are therefore not available for allotment, allocation or disbursement until the validity of the assessment and collection is determined by the court. If it is determined by the court . . . that any portion of the taxes paid under protest was excessive or illegally assessed and collected, the comptroller shall issue his warrant upon the treasurer for a refund of such sum as may have been determined by the court to be excessive or invalid, and the remainder of such fund, if any, shall be allocated and disbursed as authorized by law."
When the taxpayer pays the tax "under protest" and is later found to be entitled to a refund, the taxpayer is not required to seek his refund from those entities to which the State has prematurely disbursed the contested tax. The legislature has specifically provided that the taxpayer is to pay the contested tax to the State and that, upon a proper judicial determination, the State is to refund the contested tax. Therefore, as to this issue, we affirm the judgment of the Court of Civil Appeals.
 B.
As to the first issue raised here, we reverse that portion of the judgment of the Court of Civil Appeals holding that the Department is prohibited from applying the work-back method to determine taxable value.
The "work-back valuation method" has been defined as:
 "A method for calculating market value of oil or gas at the well-head. . . . Under this method costs of transportation, processing and treatment are deducted from the ultimate proceeds of the sale of the oil or gas and any extracted or processed products to ascertain well-head value."
Howard R. Williams and Charles J. Meyers, Oil and Gas Terms
977-78 (6th ed. 1984) (citing Rev.Rul. 83-161, 1983-44 I.R.B. 8, 77 O. G. Rep. 605 (10/31/83) (removal price of *Page 889 
Alaska North Slope oil for purpose of windfall profit tax)).
The Alabama Code requires producers of natural gas to pay a privilege tax on the value of the natural gas at the wellhead. The Code defines "value" as:
 "The sale price or market value at the mouth of the well. If the oil or gas is exchanged for something other than cash, if there is no sale at the time of severance or if the relation between the buyer and the seller is such that the consideration paid, if any, is not indicative of the true value or market price, then the department shall determine the value of the oil or gas subject to the tax hereinafter provided for, considering the sale price for cash of oil or gas of like quality."
§ 40-20-1(3), Ala. Code 1975.
The Court of Civil Appeals held that § 40-20-1(3) prohibited the Department of Revenue from computing value by any method other than by the actual sale price of the raw gas or the sale price for cash of other gas of like quality. To the contrary, we believe the language of this statute does provide the Department adequate authority to assess "value." We are also quick to state that the Department is not without limitation in its authority to assess "value." First, the statute defines "value" as "sale price or market value." Therefore, any method of assessing "value," other than actual sale at the wellhead, must be calculated to result in an amount approximating market value.
Under certain situations, § 40-20-1(3) authorizes the Department to determine "value." That section states that the Department determines value in one of three situations: (1) "[i]f the oil or gas is exchanged for something other than cash"; (2) "if there is no sale at the time of severance"; or (3) "if the relation between the buyer and the seller is such that the consideration paid, if any, is not indicative of the true value or market price." Id. The Department may assess value only upon a showing of one of the specified situations.
If one of the three situations is present, "then the department shall determine the value" of the raw gas, "considering the sale price for cash of . . . gas of like quality." Id. (emphasis supplied). The appeals court interpreted the word "considering" so as to limit the Department to determining value based solely upon "the sale price for cash of . . . gas of like quality." However, the word "considering," as used in § 40-20-1(3), indicates that the sale price of like-quality gas is not dispositive of the value of gas at the wellhead for which there has been no arm's-length cash sale, but that the Department is to "reasonably regard" the like-quality gas sales contracts. See Black's LawDictionary, "Considered," 307 (6th ed. 1990).
By the provision taxing natural gas at the wellhead, the legislature intended that the amount of the tax be derived from a calculation involving the "value" of the gas. See §40-20-2(a), Ala. Code 1975 ("[t]he amount of such tax shall be measured at the rate of eight percent of the gross value"). Therefore, we must recognize that a determination of "value" is fundamental to the assessment of the privilege tax. We conclude that the legislature expressly gave the Department the authority to determine value. As discussed supra, "value" is the "sale price or market value at the mouth of the well." §40-20-1(3). The legislature instructed the Department to "consider the sale price for cash of . . . gas of like quality." Id. Obviously, as discussed above, this does not mean that the Department is constrained to determine value basedonly on those like sales; however, the Department is constrained to assess the "value" or "market value" of the gas. Therefore, we hold that the Department has not been limited in the method that it may use to arrive at the "value" of the gas; however, any determination of value, other than the actual sale price for cash at the wellhead, may be challenged by the taxpayer on the ground that the assessment overestimates, or underestimates, the "value" or "market value." Value is a question of fact, and value may be shown by expert testimony or by evidence of other sales of like-quality gas. Also, when the Department resorts to the work-back method, which is disfavored as *Page 890 
a method of calculating value,[2] the assessment can be attacked by showing that the calculations improperly included or excluded items in such a manner that the end result does not fairly indicate value.
We reverse that portion of the judgment of the Court of Civil Appeals holding that the Department cannot use the work-back method to determine value. Because that court pretermitted other issues, we remand this case to that court for further proceedings in accordance with this opinion, including a remand to the trial court should further findings of fact be necessary.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and MADDOX, ALMON, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
[1] Act 92-186, Ala. Acts 1992, known as the "Alabama Taxpayers' Bill of Rights and Uniform Revenue Procedure Act," effective October 1, 1992, repealed and replaced § 40-1-12 and many other tax procedure provisions. Because this case was filed and the taxes paid under protest prior to that effective date, §40-1-12 applies in this case.
[2] The parties disagreed as to whether the work-back method is "generally accepted" or is the "last resort" in determining value. This Court has found no cases that embrace the method as a preferred method of assessing value and, indeed, the prevalent view seems to be that the method is to be used when there are no factually comparable sales contracts. We note that the statute before this Court, § 40-20-1(3), does not limit the Department in the methods it may use in assessing the value of the gas; however, the method used must be reasonably calculated to arrive at the fair market value of the gas. See Amerada HessCorp. v. Conrad, 410 N.W.2d 124, 130 (N.D. 1987). We recognize, however, that any determination as to the efficacy of the work-back method must await resolution of the factual matters by the finder of fact. Id.