AFTER REMAND FROM THE SUPREME COURT
ROBERTSON, Presiding Judge.
The prior judgment of this court has been affirmed in part and reversed in part by the *891 Supreme Court of Alabama. Ex parte State of Alabama, 638 So.2d 886 (Ala.1992). This ease is now before this court on remand.
The Alabama Department of Revenue (Department) and Phillips Petroleum Company (Phillips) entered into a Closing Agreement on May 27, 1983, as a result of a hearing regarding the audit period from March 1980 to February 1983. This agreement provided that the “[t]axpayer will remit monthly Gas Production and Privilege Tax due in accordance with said hearing ... [and] ... the total production from the Chatom wells will be reduced by the adjustments outlined in the audit report....”
The Audit Explanation in the report provided that Phillips would pay taxes on “lease fuel” based on “gas sales to Alabama Power Company ... and other comparable gas prices in the same area” and that “plant fuel” value would also be determined by deducting 21%. As to “re-injected gas” (residue gas not sold, but re-injected into the reservoir to maintain pressure), it stated:
“a 21% treatment charge is subtracted from the sale price of the condensate and liquefiable hydrocarbons and taxes are calculated on the difference. The 21% deduction allowed by the State is for the purpose of determining the well-head value. Therefore, ... the comparable sales price (market value) of the residue gas less 21% must be used to determine the tax liability on the re-injected gas_ The 21% deduction is subtracted and the severance taxes are calculated on the balance.”
During the 1986 audit, the Department notified Phillips that the work-back method would be used to determine well-head value. This method, according to the Department’s attorney at oral argument on remand, determined the well-head value to be 89% of the market value instead of the 79% that Phillips had paid severance taxes on during the 1983 to 1986 audit period. This resulted in Phillips being assessed approximately $1.3 million in additional severance taxes for gas produced in the Chatom Field in Washington County during the audit period of August 1, 1983, through July 31, 1986.
After remitting the additional payment under protest, Phillips appealed to the Montgomery County Circuit Court. Following an ore tenus proceeding, the trial court determined that:
“(1) The statutory interpretation applied at the time of the Closing Agreement and afterwards establishes the basis for valuation of the taxpayer’s gas. The basis could not be changed without warning and prior notification to the taxpayer.
“(2) It was on July 22, 1986, that the Department of Revenue first notified the taxpayer that it would disallow the basis of valuation utilized in the Closing Agreement and that the gas would be valued by taking the sales price of the treated products and subtracting certain costs associated with the treatment plant, i.e., the work-back method.”
The trial court held that the Department could not use the work-back method to calculate the value of Phillips’s gas prior to the notification date. Accordingly, the trial court ruled that Phillips was entitled to a refund for the period prior to notification; however, the trial court held that the Department could use the work-back method to calculate the value of Phillips’s gas for tax purposes from the date that the Department notified Phillips of its intent to use that method.
The Department appealed to this court, and Phillips cross-appealed. This court’s original opinion held that the Department could not use the work-back method even after notifying Phillips and that Phillips was therefore entitled to a refund of the entire protested sum that it had paid under the Department’s February 1988 assessment. This court also held that where a taxpayer pays a tax “under protest” and is later found to be entitled to a refund, the state alone is responsible for refunding the contested tax and the taxpayer is not required to seek the refund from entities to which the state has prematurely disbursed the tax. This portion of our judgment was affirmed by the supreme court and is not an issue on remand.
In reversing the judgment of this court, in part, the' supreme court stated that “[t]he Court of Civil Appeals held that the trial court erred in holding that the Department could properly use the work-back method *892 once it had notified Phillips.” Id. at 888 (emphasis added). The supreme court then reversed that portion of this court’s holding.
In its opinion reversing, the supreme court held that the language of § 40-20-1(3), Code 1975, grants the Department authority to use the work-back method; however, it stated that “the work-back method ... is disfavored as a method of calculating value....” Id. at 889-890. By footnote, the supreme court stated that “the prevalent view seems to be that the method is to be used when there are no factually comparable sales contracts.” Id. at 890.
The supreme court remanded this case to this court “for further proceedings in accordance with [its] opinion, including a remand to the trial court should further findings of fact be necessary.” Id. at 890.
The record reflects that an auditor for the Department testified as follows:
“[Q-] But you also know that if there’s no sale at the wellhead, that there is another provision on down in this statute that will guide you, correct, sir?
“[A.] Yes, sir.
“[Q.] And that says that if there’s no sale, then the Department shall determine the value of the oil or gas subject to the tax provided for considering the sales price for cash of oil or gas of like quality; right?
“[A.] Yes, sir.
[[Image here]]
“[Q.] Did you look at sales of like quality gas in this audit?
“[A.] No, sir.”
[[Image here]]
“[Q.] And you didn’t look at like kind sales, right?
“[A.] I didn’t look at like kind sales. I had the information from the sales they had.
“[Q.] You didn’t look at like kind sales?
“[A.] No, sir.”
In a pretrial deposition, the Department’s auditor testified as follows in response to questioning from Phillips’s lawyer:
“[Q.] [Y]ou will concede to me that you absolutely and positively didn’t look to a like kind sale no matter what the statute might say[.]
“[A.] I did not look to a—
“[Q.] [E]xcuse me, no matter what the statute might say, before a bill was sent to Phillips Petroleum Corporation for excess of two point six million dollars. Am I correct?
“[A.] I did not look at wellhead like quality sales, that’s—
“[Q.] You made no investigation into that matter whatever.
“[A.] No.”
Introduced into evidence at trial were contracts with respect to producers of like-quality untreated gas in gas production fields in close proximity to the Chatom Field. Under all of these contracts, the well-head value of the untreated gas ranged from approximately 40% to 70% of the value of the refined products. Thus, the 21/79% contract upon which Phillips valued its gas and reported its severance taxes reflected a higher well-head valuation of untreated gas than that shown under the like-quality contracts. All of the like-quality contracts were in effect during the audit period in question.
The Department argues that it “considered” evidence of like-quality sales as much as Phillips did, inasmuch as Phillips, the Department says, did not itself emphasize the like-quality contracts when valuing its gas during the course of the audit by the Department. However, the controlling statute does not place the duty upon Phillips to consider like-quality sales. That burden is placed upon the Department. Phillips entered the like-quality sales contracts into evidence before the trial court. That evidence showed that Phillips valued its gas at a rate higher than provided in any contract before the court, including contracts between Phillips and non-plant owners using Phillips’s treatment plant.
In view of the supreme court’s opinion, we affirm the trial court’s determination that the Department could not utilize the work-back method prior to July 22, 1986. That part of the trial court’s judgment setting aside the final assessment for the period between August 1, 1983, and July 22, 1986, is hereby *893 affirmed. That part of the trial court’s judgment that upheld the Department’s final assessment from July 22, 1986, until July 31, 1986, and allowed the Department to utilize the work-back method is hereby reversed.
For judicial economy, we deem it unnecessary for the trial court to take any additional testimony or to make any further findings of fact. It is clear from the record that the Department did not utilize the work-back method in accordance with the supreme court’s opinion.
This case is remanded for the trial court to order refunds in accordance with this court’s original opinion and the supreme court’s af-firmance of the refund issue.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THIGPEN and YATES, JJ., concur.